Martin Jimenez CASTRO, Petitioner,

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–73858.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2006.

Filed Aug. 9, 2006.

Philip E. Cook, Esq., Rasha Gerges, Esq., Jones Day, Los Angeles, CA, for Petitioner.

Martin Jimenez Castro, Santa Ana, CA, pro se.

Janice K. Redfern, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before: PREGERSON, W. FLETCHER, and BYBEE, Circuit Judges.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

## MEMORANDUM *

Martin Jimenez Castro was charged as an alien in the United States without having been admitted or paroled. He applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1), arguing that his removal would cause his American citizen son "exceptional and extremely unusual hardship." An immigration judge ("IJ") denied him this relief but granted his application for voluntary departure. On May 11, 2004, the Board of Immigration Appeals ("BIA") upheld the IJ's decision on appeal. Castro did not file a petition for review of that decision.

Castro filed a timely "Motion to Reconsider and for Stay of Removal/Deportation" on May 21, 2004, but he identified no errors of fact or law and instead asserted the same hardship argument he made in his appeal. The BIA denied his motion on July 8, 2004. In denying the motion, the BIA noted that Castro had remained in the United States after the thirty-day voluntary departure period lapsed, and accordingly he could not apply for cancellation of removal for 10 years. *See* 8 U.S.C. § 1229c(d)(1). Castro filed a timely petition for review of the BIA's denial of his motion to reconsider.

■ A motion to reconsider must identify errors of fact or law in the BIA's decision denying an appeal. 8 C.F.R. § 1003.2(b)(1). In his motion to reconsider, Castro did not identify any such errors in the May 11 order. The BIA therefore did not abuse its discretion when it denied the motion to reconsider. *See Membreno v. Gonzales,* 425 F.3d 1227, 1230 (9th Cir. 2005) (en banc).

■ The BIA's conclusion that Castro violated the terms of the voluntary departure order by staying in the United States

for longer than thirty days was in error. A timely-filed motion to reconsider tolls a voluntary departure period. *See Azarte v. Ashcroft,* 394 F.3d 1278, 1289 (9th Cir. 2005); *see also Barroso v. Gonzales,* 429 F.3d 1195, 1205 (9th Cir.2005). Castro had twenty days remaining before his voluntary departure period expired when he filed his motion to reconsider, and this time may be reinstated. *See Desta v. Ashcroft,* 365 F.3d 741, 750 (9th Cir.2004).

Castro's petition for review is DENIED in part and GRANTED in part. A 20–day period of voluntary departure shall commence upon the issuance of the mandate.

PREGERSON, Circuit Judge, concurring in part and dissenting in part.

I agree that the Board of Immigration Appeals ("BIA") must reinstate twenty days of voluntary departure. But I cannot join the majority's holding that the BIA did not abuse its discretion when it declined to reconsider Jimenez Castro's application for cancellation of removal. Because the BIA failed to properly weigh the unusually acute hardship that Jimenez Castro's U.S. citizen son will suffer if his father is removed, I respectfully dissent in part.

We review the BIA's denial of a reconsideration motion for an abuse of discretion. *See Salta v. INS,* 314 F.3d 1076, 1078 (9th Cir.2002). We have held that generalized, cursory consideration of hardship to a U.S. citizen child constitutes an abuse of discretion. *See Jara–Navarrete v. INS,* 813 F.2d 1340, 1342 (9th Cir.1986). The BIA must take into account all "the *social* and *humane* considerations presented in an applicant's favor and balanc[e] them against the adverse factors that evidence the applicant's undersirability as a permanent resident." *Arrozal v. INS,* 159 F.3d 429, 432–33 (9th Cir.1998) (emphasis in original) (quotation omitted). Because the BIA failed to properly consider and weigh the relevant hardship factors when assessing Jimenez Castro's application for cancellation of removal, the BIA abused its discretion by denying his motion to reconsider.[1]

The facts of this case demonstrate that the BIA did not properly consider the magnitude of the hardship. Jimenez Castro entered the United States in January of 1983, at the age of twenty, and has not left this country since that date. Jimenez Castro has never been convicted of a crime in his twenty-three years in the United States. He has been a productive worker and has been paying his taxes since 1998. His U.S. citizen son, Martin Cristian, was born in 1985. Martin Cristian lives with his father. His father is his sole support, economically and emotionally. His mother is not in the United States. Martin Cristian graduated high school and appears to be attending college. This U.S. citizen child will have to abandon his education—the key to his dream of becoming a law-

---

1. The majority states that Jimenez Castro's motion to reconsider did not identify errors of fact or law, *see* 8 C.F.R. § 1003.2(b)(1), and thus concludes that the BIA did not abuse its discretion when it denied the motion. While it is true that Jimenez Castro did not make sophisticated legal arguments in his three-page motion, the majority makes no mention of the fact that Jimenez Castro filed the motion in *pro per.* We construe liberally motions and complaints made by parties unrepresented by counsel. *See Ashker v. Cal. Dep't of Corr.,* 112 F.3d 392, 395 (9th Cir.1997); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotations omitted)). Here, where Jimenez Castro's *pro per* motion to reconsider emphasized the hardship that his removal would cause to his son, a liberal construction of the motion suggests that the BIA failed to properly consider and weigh the hardship factors.

yer—if his father is removed, and will lose his father who is his primary role model.

The facts giving rise to Jimenez Castro's removal proceedings do not detract from the powerful hardship equities of his case. In 2002, Jimenez Castro filed an application for political asylum based on "the extreme[ly] poor conditions" in Mexico. The application, typed and written in English, was filed in *pro per.* It is apparent that someone helped Jimenez Castro prepare this application, but the record does not indicate who counseled him. The application failed because the alleged conditions did not rise to the level of persecution and because Jimenez Castro filed the application eighteen years too late. *See* 8 U.S.C. § 1158(a)(2)(B) (requiring that an application for asylum be filed "within 1 year after the date of the alien's arrival in the United States."). The immigration judge did not ask who had given Jimenez Castro this ineffective legal advice.

At argument, we noted that Jimenez Castro's son will turn twenty-one in November, at which point the son will be eligible to file a Petition for Alien Relative on his father's behalf as an immediate relative under 8 U.S.C. § 1151(b)(2)(A)(i). When asked what bearing, if any, Jimenez Castro's voluntary departure would have on a subsequent petition, the government stated, "[i]f he voluntarily departs, there are no bars for seeking readmission." The government was wrong. In fact, Jimenez Castro will be barred from returning to the United States for ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II) (making inadmissible for ten years any alien who departs the United States after having been unlawfully present for one year or more). Thus, not only will this outcome impose a draconian punishment on Jimenez Castro and his family, but the government would have misled the court to believe that no such punishment would accrue.

The BIA abused its discretion when it denied Jimenez Castro's motion for reconsideration of his application for cancellation of removal. A long-term resident like Jimenez Castro is precisely the type of immigrant whose removal should be cancelled to alleviate the unusual hardship to his U.S. citizen child. *See* 8 U.S.C. § 1229b(b)(1)(D). Jimenez Castro is the victim here: incompetent legal advice led him to file an ill-advised asylum application that will destroy the life that he has made in this country for more than two decades. At a time when our leadership has recognized the "important role that families play in our society" and emphasizes "the special bonds that link children and parents," Presidential Proclamation No. 7934, 70 Fed.Reg. 55,511 (Sept. 16, 2005), I cannot countenance an outcome that will separate Jimenez Castro from his U.S. citizen son until 2016. For the foregoing reasons, I respectfully dissent in part.